Our second case for argument is United States v. Rice. Ms. Garst. Good morning, Your Honors. Hannah Garst on behalf of Mr. Rice. The sole issue in this case is whether Mr. Rice's conduct constitutes a pattern of activity pursuant to U.S. Sentencing Guidelines 4B1.5b. The guideline itself adds five levels if the defendant engaged in a pattern of activity involving prohibited sexual conduct. And the guidelines itself has defined pattern of activity as when on at least two separate occasions the defendant engaged in the prohibited sexual conduct with a minor. It's our contention that Mr. Rice's conduct committed distinct offenses that occurred from the midday of February 14th through the early hours of February 15th, but these distinct offenses... How was this issue preserved in the district court? Your Honor, he did not raise it. He represented himself pro se, so it is on plain error only. Well, I wonder whether it's reviewable even on that theory. There is a doctrine that if the defendant does not object to the pre-sentence report, the district judge is free to adopt it. And that appears to be what happened here, right? This critical finding is in the pre-sentence report. So I wonder whether there is any possible claim of error at all. Your Honor, this court has held in U.S. v. Jaime's that if everybody misses it, the district court, probation, the government, defense counsel, or in this case, pro se defendant, that this court still may review on plain error. And it's our contention that the... I don't think you're getting my question. It is, is it possible to describe as error a district court's adoption of a pre-sentence report when the defense is content to have it adopted? If the pre-sentence report does not support the enhancement, we would say yes. And in this case, we do not believe... Do you have any authority for that proposition? Not offhand, Your Honor. Okay. Please proceed. If I may look at the pre-sentence report, the probation office points to the events that occurred over a continuous span of time throughout the evening of February 14th. So you're focusing on this approximately eight-and-a-half-hour period from 10 o'clock in the evening until 6.30 or so in the morning? Correct, Your Honor. And we believe that that's a continuous offense, a continuous... Continuous occasion. Occasion, excuse me. Yes. That would not amount to two separate occasions as required by the 4B1.5. So now, of course, the Woodin case comes up in a different statutory context. Does that matter? We believe it does, Your Honor, because the Woodin is talking about, you know, whether the occasions are different from one another, and they talk about if the offense is committed close in time, uninterrupted course of conduct, and that's what happened in this case. It's uninterrupted, very close in time. So you see Woodin as an overall rejection of the idea that this court has had in the past, that if you had an opportunity to stop and rethink, then when you resume, it's a new occasion. Correct, Your Honor. That if it is uninterrupted, it's conduct that's continuing, that specifically with relation to 4B1.5, that Congress said two separate occasions. And the whole point of the 4B1.5 is to punish repeat dangerous sex offenders against minors. And the 4B1.5, when it was created, is in conjunction. If they're not a career offender, if they don't have a previous conviction, they still wanted to add five levels to account for that repeat behavior. But in this case, we would contend that it's not repeat behavior, that this is one continuous occasion. What about the earlier exchange of messages? That surely isn't part of this tryst that went on. Your Honor, the record is not clear as to what was contained in those messages. There's no exhibit as far as that was on Mingle. There was nothing presented as to what those messages contained. The text messages that came in had to do with what occurred on February 14th right before the meeting, and that was also the basis of the indictment on Count 1, where those messages, the text messages exchanged earlier the day on February 14th. Could you, and I looked through the record. I didn't see anything from the earlier exchanges on Mingle. But could you use those text messages that occurred shortly afterwards that were admitted to show, he clearly was contacting her for the purpose of trying to engage in sexual relations with her. Correct, Your Honor, and the text messages, it's our contention that it was a continuing activity because he's texting her that day. Even from the initial contact? Is it your argument that the initial contact with her on Mingle through February 15th, that's all one occasion? I think that would be a harder argument to make if there was something in the record on the Mingle, if we had those messages going back and forth. Instead, she says, yes, we were talking a couple days before, but there was no introduction of what those conversations actually contained, which I believe is why the indictment itself started on the February 14th and had to do with the text messages, because that's how they charged it. That's how they proceeded in the case. And the record just doesn't contain what happened those two days prior. Unless there are any further questions, I will reserve my time for rebuttal. Certainly, Counsel. Ms. Burns.  May it please the Court. My name is Allie Burns. I'm appearing on behalf of the government in this case. The district court did not plainly err when it applied that five-level enhancement to Mr. Rice for engaging in this pattern of activity of prohibited sexual conduct because there were at least two occasions of prohibited sexual conduct. Could you identify them? I'm actually troubled with the government's argument insofar as it seems to ignore the quite on point guidance from the Wooden case. Yes, Your Honor. So the occasions I think as I see them is the initial contact by Mr. Rice with the 13-year-old online, testimony and evidence included within the PSR, which the court adopted. So the mingle exchanges you're relying on, even though we don't know what they were? The victim testimony about the contact occurring several days prior to those text messages. But contact. I mean, again, I'm trying to push just because you could say, you know, hi, my name is Joe, you know, whatever your name may be. Or you could say, you know, let's get together for a sexual encounter. And those are completely different things. You know, I like to play video games, whatever. So your first thing, you don't know whether it's a sexual contact or not. Sure. So at trial the victim testified about the conversations being sexual in nature, and she testified that there were several days of conversations before those text messages. What does sexual in nature mean? Pretty? Sorry? You're pretty? I believe the question was along the lines of were there sexual conversations or conversations about sexual topics. But was her testimony clear that those conversations took place from the initial contact on mingle? I think that if my memory serves within the record, there were questions of were the conversations sexual in nature, and then there was a question I think on page 59 of the record specifically about did that occur a couple of days before you met or just that day. I know the text messages obviously exhibit two. That's a different matter. It's just from that day. But I would note even there, that starts, I think, about 9 a.m. in the morning. And what's notable is there's testimony within the record in the PSR that that occurred while Mr. Rice was in Missouri and that the victim was in Illinois. That's occurring, you know, all through the Internet or through a cell phone. And that is an occasion. That's a specific act, that enticement, that assent to engage in sexual activity. Then you have that. That's not what the district court found though, right? The district court did not base it on one of the occasions on the enticement. The PSR did not include that. However, the trial record and the factual summary included that information. But that is correct, that within the application for plus five, that is not what the PSR wrote. I thought the district court was concerned that there was a sexual encounter immediately after they get together and then they sleep for a little while and then there's another sexual encounter. And that's tough to support in light of Wooden. Sure, Your Honor. And I think Wooden is actually helpful to this court in considering it. One of the examples the court talks about in Wooden is this example of a wedding. So there's the ceremony, there's the cocktail hour, and there's the dancing afterwards. And they say that that is several acts or events, but that's one occasion. And I think that if this case, if we just look at the first night on February 14th and we look at the testimony and evidence that, in fact, oral sex and vaginal sex occurred with the parties, that's kind of comparable to that. I would say that February 15th, the second sexual act that occurs after sleeping through the night, the next day, is more comparable to, let's say, a rehearsal dinner and a wedding. Those are separated by- They're still in the same location. I mean, they're in the same room. They've never moved. Sure, but I think if you look at this repeated offender, the 4P1.5, the case law, that does exist. I know it's not in the Seventh Circuit. There's a case out of the Eighth Circuit where it was a pattern of three days. They traveled to Texas and a sex act occurred once, and that was a basis to apply it over a three-day period in Texas. I think there's an Eleventh Circuit case that could be helpful, and it shows that child pornography was taken with one day in between. I just have to say I've never understood why the government is so insistent on things like this five-level enhancement, which I think is putting to one side the mingle stuff and all of that. It's a real stretch. You have 3553A. These are just the advisory guidelines. If this man deserves particular punishment, you have every opportunity to make that argument to the district court. So why go to the mats on these things that have nothing to do with liability, with guilt or innocence? They're just sentencing enhancers. Your Honor, I think in this case, first off, because Mr. Rice failed to object, there was no argument here. Mr. Rice was being very foolish. You can tell, you know, reading this. He thought he knew much more than perhaps he did. Right, but, Your Honor, I think in that being applied and considering the facts that this did occur over several days, that the enticement can be considered as a prohibited sexual act, that I think that this is what 4B1.5 was intended to target. This wasn't like the cases we've seen. So you think 4B1.5 is for enticement followed by action on it as opposed to sexual encounter number one, a week later sexual encounter number two, a week later sexual encounter number three, clearly three different occasions, you know, repeating a form of behavior. I think in looking at the case law, and of course it does include case law outside of the Seventh Circuit, yes. I think that there's a difference between an individual who solely entices a minor online and then does not sexually abuse them versus someone who does all of that. So you seem to change your argument in response to Judge Wood's questions and back off of the February 14th morning of February 15th being separate occasions and go back to enticement. Sure. So the government's argument is that in looking at all of those, that is the pattern of behavior. If we're talking about just the February 14th and 15th, I think the argument still applies because that's multiple occasions of sexual abuse. So after Wood and you still think each of the sexual acts constitutes a separate occasion? I do, and I think Wooden supports that. One of the examples in Wooden they talk about is how would someone talk about those burglaries, right? Would it be ten occasions or would it be one occasion of ten burglaries? I think similarly here, if you think of how the victim talked about this within the record, it was the occasion where she had her virginity taken and then the occasion the next morning when he raped her, and it was painful. She talked about those as separate occasions because they were distinct by date and time. This isn't similar to the cases where somebody- But it can't be what the victim says because if you analyze that to Wooden, I'm sure if you talk to each of the victims of the robberies, they would each say, well, my robbery was separate from the robbery down the street. So I don't know that the victim's testimony would dictate that. And I could rephrase that. Even an average person talking about it, I think that would be a common way to speak about it different than talking about it being multiple acts of sexual assault. So I do agree it would be different if only the night of February 14th occurred, where the photos were taken at the same time where he was having vaginal and oral sex with her. But nobody cares about the fact that it's called February 14th at 11.59 p.m. and it's called February 15th at 12.01 a.m. I mean, it's just a continuous flow of time where there's an overnight encounter and maybe a couple of different sexual approaches during that overnight time. I think the evidence in this specific case with Mr. Rice was different. They slept in between. They were different dates. We have a time stamp based on the photos. Well, I'm telling you, I'm not impressed by the different dates. I know they drifted off to sleep for a little while, not all that long it sounds like. Sure, and even if the court does group those two together, you still have the online enticement that occurred while he was in a different state. And I understand that it was charged February 14th, but it was charged on or about February 14th. And you think the best evidence for that being an enticement is the testimony from the victim because I didn't see any mingle communications in the record from that early on incident. That's correct. There were no mingle communications recovered or in the record or admitted. So I do. I think in looking at Exhibit 2, the text messages, it's clear the context of the conversation. That wasn't how the conversation started. It had already been happening. And the victim's testimony is that it was a couple of days. I think even within the defendant's brief, they acknowledged that it was a couple of days that these conversations were going on before those text messages. I will say that beyond that, this is a matter of first impression and that this court has said that it will rarely overturn because the error will rarely be clearly obvious. So based on that, we would ask this court to affirm the district court. Thank you. Thank you, counsel. Anything further, Ms. Garst? Yes, Your Honor. If I may just read from the record as far as what was stated, the government asked her about talking to the defendant. Okay, when you first started talking to Duke through the Mingle app, what kinds of things were the two of you talking about? Sexual things. Okay, and they go on to the text messages. There's no definition of what the sexual things were they talking about. Later they ask about the text messages. Do you think you were messaging him for like just a couple days before or was it longer than that? A couple days. Again, move on to the next question. No definition of what occurred prior to. So there's actually no evidence that the enticement began prior to February 14th, based on what was placed into the record. The government's argument on 4B1.5 is so expansive in what they're saying today that it would really cover almost all child sex offenses that don't have a separation of time. And we believe that that's problematic and not at all what was intended by this guideline and the application. Unless there's further questions? Thank you, Your Honor. Thank you, Counsel. And Ms. Garris, the court appreciates your willingness to accept the appointment and your assistance to the court as well as your client. The case is taken under advisement.